**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 52508**

PACIFICORP, dba ROCKY MOUNTAIN POWER, )
)
    Applicant-Appellant, )
)
v. )
)
IDAHO PUBLIC UTILITIES COMMISSION, )
)
    Respondent. )
)
)

**Boise, October 2025 Term**

**Opinion filed: November 19, 2025**

**Melanie Gagnepain, Clerk**

---

Appeal from the Idaho Public Utilities Commission.

The Commission's orders approving Appellant's application for deferred costs in a revised amount are <u>affirmed</u>.

Stoel Rives LLP, Boise and Markowitz Herbold PC, Portland, Oregon, for Appellant. Dallas DeLuca, argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Adam Triplett, argued.

---

BRODY, Justice.

This appeal arises from the Idaho Public Utilities Commission's ("Commission") partial denial of PacifiCorp's application to augment its rates, pursuant to the Commission's Energy Cost Adjustment Mechanism ("ECAM application"), to recoup compliance costs associated with Washington's Climate Commitment Act ("Washington's CCA" or "CCA"), Wash. Rev. Code §§ 70A.65.005 to .901 (West 2024). PacifiCorp owns and operates a natural gas powerplant in Chehalis, Washington, that supplies electricity to Idaho customers. Washington's legislature enacted the CCA, which implements a "cap and invest" program whereby greenhouse gas emitters like PacificCorp are required to purchase "allowances" when their emissions in Washington exceed certain limits in any given year. *See id.* § 70A.65.060(1), (2)(a). In its ECAM application, PacifiCorp sought the Commission's authorization to recover, among other costs, $2,306,040 from Idaho customers—an amount representing Idaho's share of the cost for PacifiCorp's purchase of

1

the CCA allowances needed to operate the Chehalis powerplant. While the Commission authorized recovery of more than $60 million in other costs unrelated to this appeal, the Commission disallowed PacifiCorp's recovery of CCA allowance costs, reasoning that recovery of those costs would not be "just, reasonable or sufficient." *See* I.C. § 61-502.

To reach that conclusion, the Commission considered the 2020 PacifiCorp Inter-Jurisdictional Allocation Protocol ("Protocol") to evaluate the propriety of allowing PacifiCorp to recover its CCA allowance costs from its Idaho customers. The Protocol is an agreement between PacifiCorp and interested parties from the six states where PacifiCorp provides service, including state utility regulatory commissions, state agencies, customers, consumer advocates, and conservation organizations. Idaho became a party to the Protocol by the Commission's April 2020 order approving its use to help determine just and reasonable rates for the electricity PacifiCorp provides its Idaho customers. *In re Rocky Mountain Power's Appl. for Approval of the 2020 PacifiCorp Inter-Jurisdictional Allocation Protocol* (*2020 Protocol Application*), No. 34640, 2020 WL 2044234, at *1–2, *3 (Idaho Pub. Utils. Comm'n Apr. 22, 2020).

The purpose of the Protocol is to devise a methodology to allocate the costs and benefits of PacifiCorp's interstate generation assets—e.g., the Chehalis facility—among its customers in the six states. To achieve its purpose, the Protocol takes as its cornerstone the assignment of "generation-related dispatch costs" and taxes on a *systemwide* basis—that is, among PacifiCorp's customers across all six states. By contrast, PacificCorp's customers in each state are exclusively responsible for the cost of "state-specific" energy and climate policies. Because the Commission classified Washington's CCA as a state-specific energy and climate policy, it denied PacificCorp's application to recoup the cost of the CCA allowances from Idaho customers.

Separate from the Protocol, the Commission also considered Idaho Code section 61-502, the source of its rate-making authority. Section 61-502 tasks the Commission with determining "the just, reasonable or sufficient rates" that public utilities may charge Idaho customers. The Commission concluded that passing along the cost of Washington's CCA to PacifiCorp's Idaho customers would violate that mandate because under Washington law, Washington utility customers are shielded from these costs. The Commission expressed concern that PacifiCorp's recovery of CCA allowance costs in Idaho alone would "result in the creation of discriminatory customer classes," essentially placing some of the cost of Washington's climate policies on the backs of Idaho ratepayers.

2

PacifiCorp sees things differently. It objects to the Commission's interpretation and application of the Protocol to evaluate the recovery of CCA allowance costs from Idaho customers. PacifiCorp insists that the CCA allowance costs it incurs to operate the Chehalis powerplant are no different than a generation-related dispatch cost or tax that the Protocol allocates on an interstate basis. PacifiCorp further argues that the Commission is obliged to consider whether the disallowance of those costs is just, reasonable, or sufficient with respect to it, as well as with respect to Idaho customers. In PacifiCorp's view, since the Chehalis facility is the most cost-effective source of energy for Idaho customers, those customers should be required to share in the costs of that energy, including those arising from Washington's CCA.

This Court's role is limited to determining whether the Commission's rate-making orders violate a utility's constitutional rights, are unsupported by the evidence, or were not pursued "regularly." I.C. § 61-629. In the present case, we are satisfied that the Commission regularly pursued its authority when it determined, based on the rate-making mandate supplied by Idaho Code section 61-502, that allowing PacifiCorp's recovery of CCA allowance costs would be neither just nor reasonable. Because the Commission's determination based on section 61-502 provides adequate and independent grounds to deny PacifiCorp's recovery, we decline to review the Commission's interpretation or application of the Protocol. Accordingly, we affirm the Commission's orders.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

While this appeal relates back to PacifiCorp's April 2024 ECAM application, the relevant starting point is almost five years earlier. In December 2019, PacifiCorp applied for the Commission's approval of the 2020 Protocol. *2020 Protocol Application*, 2020 WL 2044234, at *1. The 2020 Protocol modified prior allocation methodologies that the six states had observed in PacifiCorp's rate-setting proceedings. *See id.* No party opposed the Commission's approval of the 2020 Protocol. *Id.* In approving the Protocol, the Commission found it to be "in the public interest" and that it enabled "[PacifiCorp], Idaho and other stakeholders to more thoroughly examine long-term allocation options given evolving state policies on carbon based electricity." *Id.* at *3. The Commission formally "approved" the 2020 Protocol in April 2020. *Id.* at *3–4.

In April 2024, PacifiCorp applied for authorization from the Commission to adjust the rates it charges Idaho customers under the Energy Cost Adjustment Mechanism ("ECAM"). The ECAM allows a utility to increase or decrease its rates each year to reflect changes in power supply costs.

3

*See* I.C. §§ 61-502, -503; IDAPA 31.01.01.052. Specifically, the ECAM allows a utility to recover the difference between the actual net power costs it *incurred* and the base net power costs it *collected* from customers through Commission-approved base rates. Among its actual net power costs, PacifiCorp included $42 million in purchases of CCA allowances to operate the Chehalis powerplant, of which it sought to allocate approximately $2.3 million to Idaho customers.

Commission staff recommended that the Commission disallow recovery of CCA compliance costs in PacifiCorp's ECAM filing. Two intervenors, P4 Production, L.L.C. (the largest single user of electricity in Idaho) and PacifiCorp Idaho Industrial Customers (a trade organization of industrial PacifiCorp customers) similarly urged the Commission to disallow recovery of CCA compliance costs. Three members of the public submitted comments through the Commission's website and by mail advancing similar arguments. In addition to its application, PacifiCorp offered reply comments and the testimony of its net power cost specialist and director for pricing and tariff policy.

In its initial order, the Commission awarded PacifiCorp $60,093,960 in deferred costs, but it declined to authorize PacifiCorp's recovery of $2,306,040 in CCA allowance costs. It found the CCA "establishes an initial limit (or 'cap') on GHG [greenhouse gas] emissions in Washington State," which is enforced "through the auctioning and subsequent retirement of a limited number of" allowances by the Washington Department of Environment. *See* Wash. Rev. Code § 70A.65.090(7)(a) (West 2024). The Commission stated that a GHG emitter's failure to obtain allowances "can result in the imposition of 'penalty allowances' or monetary sanctions ranging from $10,000 to $50,000 per day, depending on the violation." (First citing Wash. Rev. Code § 70A.65.200(2)–(5); and then citing Wash. Admin. Code 173.446-610(2)–(6)). However, it also noted that Washington provides utilities with a certain number of "no-cost" allowances, on the condition that these allowances "be allocated only to Washington State retail customers." The Commission found that "[t]he purpose of these no-cost allowances is to protect customers in Washington from paying the incremental costs associated with transitioning to non-greenhouse gas emitting generation" under the Clean Energy Transformation Act ("CETA"), Wash. Rev. Code §§ 19.405.010 to .901 (West 2024), a separate, more stringent climate measure that *does* apply to electricity generated for Washington customers. *See* Wash. Rev. Code § 70A.65.120(1) (West 2024).

4

The Commission further found that PacifiCorp emits carbon dioxide in Washington by way of its natural gas-fired powerplant in Chehalis. The Chehalis facility exports a portion of the electricity it generates to Idaho customers. Thus, PacifiCorp's $2.3 million requested recovery reflects the "amount representing Idaho's jurisdictional share of the cost to purchase the remaining allowances necessary to operate the Chehalis facility and export electricity to customers outside of Washington." Ultimately, the Commission concluded in its initial order that allowing recovery of these costs would violate the Protocol, "which governs the allocation of costs and benefits of [PacifiCorp's] resources . . . across the jurisdictions in which [PacifiCorp] operates." It disallowed PacifiCorp's recovery of the $2.3 million in CCA allowance expenses allocated to Idaho customers.

PacifiCorp submitted a petition for reconsideration, requesting the opportunity to more thoroughly brief and argue these issues (and others) before the Commission. The Commission allowed PacifiCorp, the intervenors, and Commission staff to provide additional briefing on the CCA cost allocation issue. It ultimately denied the petition based on its interpretation of the Protocol, as in the original ECAM application.

In its order on PacifiCorp's petition for reconsideration, the Commission also provided an alternative rationale for disallowing PacifiCorp's recovery. In its view, even if the Protocol did allow PacifiCorp to recover its CCA allowance costs from Idaho customers, authorizing such a recovery would be contrary to the Commission's statutory mandate to determine "just, reasonable or sufficient rates." *See* I.C. § 61-502. On this score, the Commission took issue with the CCA's limited distribution of no-cost allowances that exclusively benefit PacifiCorp's Washington customers. The Commission found the CCA's cost-allocation scheme to be a form of rate discrimination. It concluded that allowing PacifiCorp to recover CCA compliance costs would "result in the creation of discriminatory customer classes, consisting of [PacifiCorp]'s Idaho customers who would have to pay for greenhouse gas allowances and [PacifiCorp]'s Washington customers who would not." The Commission's conclusion on this point provided alternative grounds for the Commission to conclude that the recovery of CCA compliance costs would not be just, reasonable, or sufficient. PacifiCorp timely appealed to this Court. *See* I.A.R. 14(b).

## II. STANDARD OF REVIEW

Article V, section 9 of the Idaho Constitution grants this Court jurisdiction to review "any order of the public utilities commission." Idaho Const. art. V, § 9. However, the legislature "may

5

provide conditions of appeal, scope of appeal, and procedure on appeal from" the Commission's orders. *Id.* Exercising that constitutional authority, the legislature has directed that "review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho." I.C. § 61-629.

In assessing whether the Commission has "regularly pursued its authority," our task is limited to ensuring that the Commission has acted within its statutory powers as to questions of law. *See In re Mountain States Tel. & Tel. Co.*, 76 Idaho 474, 486, 284 P.2d 681, 688 (1955). As to questions of fact, "we will sustain [the] Commission's determination unless it appears that the clear weight of the evidence is against its conclusion or that the evidence is strong and persuasive that the Commission abused its discretion." *Rosebud Enters., Inc. v. Idaho Pub. Utils. Comm'n*, 128 Idaho 624, 631, 917 P.2d 781, 788 (1996) (citation omitted). "The burden is on the party challenging the Commission's findings to show that they are unsupported by the evidence." *Ryder v. Idaho Pub. Utils. Comm'n* (*In re Ryder*), 141 Idaho 918, 924, 120 P.3d 736, 742 (2005) (citation omitted).

### III. ANALYSIS

**A. The Commission acted in the regular pursuit of its authority in disallowing PacifiCorp's recovery of CCA allowance costs on the ground that the recovery would contravene Idaho Code section 61-502's mandate to determine just, reasonable, and sufficient rates.**

The Commission's orders disallowing PacifiCorp's recovery of CCA allowance costs rested on two grounds. First, the Commission interpreted the Protocol to classify Washington's CCA as a portfolio-standard or state-specific initiative whose costs should be borne by the jurisdiction that enacted it—Washington. Second, the Commission determined that passing the costs of CCA allowances on to PacifiCorp's Idaho customers would not comport with its statutory duty to set just and reasonable rates. *See* I.C. § 61-502. PacifiCorp disputes both conclusions. As PacifiCorp sees it, the Commission misinterpreted and misapplied the Protocol, and in any event, the CCA imposes a mandatory cost on its Chehalis power plant, so Idaho customers benefiting from that power must foot Washington's bill for CCA allowances.

We decline to address PacifiCorp's argument regarding the Commission's interpretation of the Protocol for the simple reason that the Protocol does not displace the Commission's rate-

6

making duties under Idaho Code section 61-502. Indeed, by its own terms, the Protocol does not "abrogate any Commission's right or obligation to . . . determine fair, just, and reasonable rates . . . ." For the reasons that follow, the Commission's determination that PacifiCorp's recovery of CCA allowance costs would be inconsistent with section 61-502 is sufficient for us to conclude it regularly pursued its authority.

Section 61-501 of the Idaho Code vests in the Commission the power to "supervise and regulate every public utility in the state . . . ." I.C. § 61-501. The Public Utilities Law charges the Commission with a litany of more specific responsibilities. Among them is the duty to "determine the just, reasonable or sufficient rates" of services or products provided by public utilities. I.C. § 61-502. This investiture of a specific police power gives the Commission "the power and duty to set rates of return within a 'broad zone of reasonableness.'" *Utah Power & Light Co. v. Idaho Pub. Utils. Comm'n*, 102 Idaho 282, 285, 629 P.2d 678, 681 (1981) (citation omitted).

The Commission's decision disallowing PacifiCorp's recovery was well within that broad zone of reasonableness. In reaching its decision, the Commission relied on its findings regarding the asymmetrical allocation of "no-cost" allowances under Washington's CCA. The Commission viewed this allocation scheme as one that risked creating "discriminatory customer classes," with Idaho customers bearing the cost of CCA allowances, while Washington customers would not. This allocation scheme raises the simple question: who should bear the cost of the CCA's efforts to reduce greenhouse gas emissions? The Commission determined it should not be Idahoans. Again, that determination was made based on the Commission's careful evaluation of the provisions and impact of Washington's CCA. This is precisely the type of judgment call entrusted to the Commission, and it falls squarely within the regular pursuit of its authority to determine "just, reasonable or sufficient" rates under Idaho Code section 61-502.

The Commission considered PacifiCorp's ECAM application in two proceedings—one arising from the original application and another from PacifiCorp's petition for rehearing. Across those proceedings, the Commission received and considered written submissions from PacifiCorp, Commission Staff, intervenors, and members of the public. It also evaluated direct testimony from PacifiCorp's Net Power Cost Specialist and its Director for Pricing and Tariff Policy. Both orders analyzed the parties' respective positions and included the Commission's own substantive discussion of Washington's CCA, citing relevant statutory provisions. Part of that discussion was informed by arguments raised in federal litigation PacifiCorp itself initiated, challenging the CCA

7

under the dormant Commerce Clause. *See PacifiCorp v. Watson*, No. 3:23-cv-06155-TMC, 2024 WL 3415937, at *5 (W.D. Wash. Jul. 15, 2024) (rejecting PacifiCorp's claim that the CCA's exclusive allocation of no-cost allowances to Washington residents violates the dormant Commerce Clause), *appeal docketed sub nom. PacifiCorp v. Sixkiller*, No. 90-567 (9th Cir. argued Jun. 2, 2025).

Ultimately, the Commission awarded more than ninety-five percent of the total amount PacifiCorp sought to recover under its ECAM application. For each expense item, the Commission weighed whether recovery would be "just, reasonable, or sufficient" from the standpoint of both Idaho customers and PacifiCorp. In sum, we hold that the Commission's order disallowing PacifiCorp's recovery of its CCA allowance expenses finds sufficient support in the record. Further, we believe that the nature of this judgment—determining, to put it simply, who should bear the costs of expenses imposed by another state's legislative body—is precisely the kind of normative exercise of discretion entrusted to the Commission in the regular pursuit of its authority under Idaho Code section 61-502.

PacifiCorp relies on *Idaho Power Co. v. Idaho Public Utilities Commission*, 99 Idaho 374, 582 P.2d 720 (1978), *Utah Power & Light Co. v. Idaho Public Utilities Commission* (*Utah Power & Light I*), 102 Idaho 282, 629 P.2d 678 (1981), and *Utah Power & Light Co. v. Idaho Public Utilities Commission* (*Utah Power & Light II*), 105 Idaho 822, 673 P.2d 422 (1983), to urge this Court to set aside the Commission's disallowance nevertheless. We decline to do so.

The present case is unlike prior cases in which this Court held that the Commission did not regularly pursue its authority or abused its discretion. Starting with *Idaho Power Co.*, 99 Idaho 374, 582 P.2d 720, PacifiCorp contends that *Idaho Power* stands for the proposition that this Court may set aside a ratemaking order when "it result[s] in a lower rate of return than that which was deemed to be just and reasonable." We do not disagree. *See Idaho Power*, 99 Idaho at 382, 582 P.2d at 728 (holding Commission's orders not supported by the evidence). In *Idaho Power*, we were confronted with the unusual situation in which the Commission determined that the utility was entitled to recover a particular rate of return, but the rate of return was based on the Commission's erroneously calculated projection of $1.6 million in "sales for resale." *Id.* at 376, 582 P.2d at 722. In other words, the Commission's order said one thing but did another, making it virtually nonsensical.

This case is factually different. Here, the Commission maintains that PacifiCorp is *not* entitled to recover CCA allowances in Idaho because such a recovery would not be just or reasonable to its Idaho customers. And, as discussed, that determination is entirely consistent with the evidence presented about Washington's CCA. There is nothing inherently unsound about the Commission's order disallowing that recovery. *See id.* ("Idaho Power does not challenge the reduction of the company's submitted Idaho rate base . . . . Idaho Power admits that the [Commission] is vested with jurisdiction to make these adjustments . . . ."). We read *Idaho Power* to authorize this Court's invalidation of a Commission's ratemaking order when that order is inherently contradictory such that it prevents the very recovery to which the Commission determined the utility is entitled. *See id.* at 381, 582 P.2d 727 ("To deduct these sales for resale twice produces a rate of return of only 8.09 percent and is less than the rate of return found by the [Commission] to be fair, just and reasonable."). This is not the case here.

PacificCorp fares no better under *Utah Power & Light I* and *II*. In both cases, the utility challenged the wholesale exclusion of certain generation assets, allowances, and adjustments from its base rate without any explanation from the Commission. *Utah Power & Light I*, 102 Idaho at 284–85, 629 P.2d at 680–81; *Utah Power & Light II*, 105 Idaho at 824–27, 673 P.2d at 424–27. Most notably, the Commission declined to incorporate "evidence of the revenues . . . and expenses connected" with an entire powerplant and coal mine in the utility's base rate. *Utah Power & Light I*, 102 Idaho at 284, 629 P.2d at 680. Here, that would be akin to the Commission disallowing PacifiCorp's recovery for *any* of the costs associated with operating the Chehalis power plant, not just its CCA allowance expenses.

We do not find in the present case such an extreme disallowance. Instead, the Commission's disallowance was limited to a discrete expense item, and it ultimately approved PacifiCorp's recovery of more than $60 million in expenses unrelated to Washington's CCA. Critically, even in the face of extreme circumstances, we note that the *Utah Power & Light* cases likely represent the outer bounds of this Court's review. *Utah Power & Light I*, 102 Idaho at 295, 629 P.2d at 691 (Bistline, J., dissenting) ("The Court is being asked to redetermine ratemaking and classification issues which are properly the business of only the legislature or its lawful agency, the Public Utilities Commission."); *Utah Power & Light II*, 105 Idaho at 828, 673 P.2d at 428 (Bistline, J., concurring and dissenting) ("I dissent from the remainder of the Court's opinion which usurps the Commission's ratemaking function for that of its own.").

We will not take the extraordinary measure of setting aside a ratemaking order of the Commission unless it violates a utility's constitutional right, is entirely unsupported by the evidence, or is outside the regular pursuit of the Commission's authority. Because PacifiCorp has failed to demonstrate that its objection to the Commission's disallowance stems from anything more than a policy disagreement over the appropriate allocation of costs in public utility markets, we affirm the Commission's orders.

## IV. CONCLUSION

For the reasons and authorities discussed above, we affirm the Commission's Order No. 36207 and Order No. 36367 approving PacifiCorp's application for deferred costs in a revised amount.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.